THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP,<br><br>Petitioner,<br><br>v.<br><br>SANJAY GUPTA,<br><br>Respondent. | Case No.: 1:23-cv-4266 |

### QUINN EMANUEL'S MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") respectfully submits this Motion to Quash Subpoena and for Protective Order[1] in connection with a Rule 45 subpoena issued by Sanjay Gupta in his lawsuit against various current and former employees and Trustees of Michigan State University ("MSU" or "University") in the United States District Court for the Western District of Michigan. *See Gupta v. Woodruff et al.*, Case No. 23-cv-00201 (W.D. Mich.) ("*Gupta*").

### INTRODUCTION

The Board of Trustees ("Board" or "Trustees") of Michigan State University ("MSU" or the "University") retained Quinn Emanuel on August 30, 2022, to conduct an internal review of Title IX-related matters at the University, as well as the circumstances surrounding the departure

---

[1] Pursuant to Local Rule 37.2, Quinn Emanuel conferred with counsel for Gupta in an effort to resolve this dispute on June 27, 2023, and again on July 3, 2023, but the parties were unable to reach an agreement, except that counsel for Gupta withdrew one of its five requests.

1

of Sanjay Gupta as dean of the Eli Broad College of Business ("Broad College").[2] The Board engaged Quinn Emanuel because it holds "the final authority in the government of the University,"[3] and, among other responsibilities, must oversee "university risk management," "identify threats and risks," and "review any violations and failures to comply with federal, state, and local laws, rules and regulations, as well as institutional policies."[4]

Quinn Emanuel's work was quintessential legal work. Quinn Emanuel was engaged to provide legal analysis in anticipation of litigation—specifically, to examine potential legal exposure to the University from Title IX issues and from Gupta's departure as dean of the Broad College. One potential risk—that Sanjay Gupta would sue University officials and Board members—has come to fruition. On February 23, 2023, Gupta sued certain University officials in *Gupta*, and he has since filed an amended complaint adding additional officials, including the Board and all of its members. A motion to dismiss and a motion to stay discovery is pending in that litigation.

In the meantime, Gupta issued a Rule 45 subpoena to non-party Quinn Emanuel seeking its work product and attorney-client communications from its engagement by the Board. In particular, Gupta seeks the names of every individual Quinn Emanuel asked to interview and those who agreed to interviews, all documents reviewed by Quinn Emanuel, all emails Quinn Emanuel

---

[2] As part of the same engagement, Quinn Emanuel also provided assistance with crisis management and communications strategies and provided guidance on the Trustees' duty to certify Title IX reports, pursuant to Mich. Comp. L. § 388.1865b(2).

[3] Mich. Const. 1963, Art. VIII, § 5.

[4] Policy Manual of the MSU Board of Trustees, *available at* https://trustees.msu.edu/bylaws-ordinances-policies/policies/Policy-Manual-Updated-2019-09-06.pdf.

received at a dedicated email address, and how Quinn Emanuel sought documents, including what custodians and search terms it used for its review.

As the Court is aware, Quinn Emanuel is bound to protect information relating to its representation of the Board. *See, e.g.,* ILCS S Ct Rules of Prof. Conduct Rule 1.6(a). Counsel for Gupta must meet a very high burden in showing that a subpoena to the Board's legal counsel related to his litigation is justified—such discovery is extraordinary, disfavored, and must be necessary. *See End Prod. Results, LLC v. Dental USA, Inc.*, 2013 WL 12247127, at *2 (E.D. Mich. Oct. 10, 2013); *see also FTC v. Directv, Inc.*, 2016 WL 4154851, at *3 (N.D. Cal. Aug. 5, 2016); *see also Zurbriggen v. Twin Hill Acquisition Co., Inc.*, 2020 WL 4349891, at *2 (N.D. Ill. July 29, 2020). Gupta's subpoena seeks information that is plainly protected as Quinn Emanuel's work product and reveals the legal analysis, thought processes, and impressions of attorneys, as well as attorney-client communications.

The subpoena also seeks information that is overbroad and irrelevant, as Quinn Emanuel's scope of engagement was broader than issues related to Gupta and included other Title IX issues, including state certification requirements and reviews of individual student and employee Title IX cases. In addition, the subpoena is premature and burdensome to the extent it seeks information from Quinn Emanuel—a non-party—when such information should be sought from the defendants in Gupta's litigation if discovery is not stayed and the claims are not dismissed. Among other considerations, the parties to the litigation are better situated to make decisions regarding the privacy of student and employee identities and otherwise confidential University information, including sensitive Title IX reports of sexual misconduct allegations.

The Court should quash Gupta's subpoena to Quinn Emanuel and issue a protective order precluding Gupta from seeking discovery from Quinn Emanuel.

**STATEMENT OF FACTS**

On August 30, 2022, Quinn Emanuel was hired by the Board to conduct an internal review of Title IX-related matters at the University as well as the circumstances surrounding the departure of Sanjay Gupta as dean.[5]

Quinn Emanuel immediately launched its review and conducted substantial legal work over several months. Quinn Emanuel started its review by examining and analyzing the University's policies and procedures, as well as state and federal legal requirements. Based on its legal analysis, Quinn Emanuel requested records to assist Quinn Emanuel's internal review and enable Quinn Emanuel to provide advice to the Board regarding litigation exposure and risks. In connection with factual questions relevant to Quinn Emanuel's assessment of legal exposure, Quinn Emanuel sought to interview approximately thirty-three individuals, eleven of whom agreed to participate in interviews. In addition, Quinn Emanuel established a dedicated email address to receive incoming information from the University community relevant to the investigation. Quinn Emanuel provided interim presentations to the Board regarding legal guidance and its initial findings, conclusions, and recommendations.

On February 10, 2023, the Board "made a surpise motion" and unanimously voted to issue certain findings of Quinn Emanuel upon the completion of the firm's review.[6] At the time, the Board Chair disclosed that there was "no report to date." At the direction of the Board, Quinn Emanuel subsequently transmitted its final, 100-page, redacted report on March 31, 2023, and it

---

[5] As mentioned *supra* note 2, Quinn Emanuel also provided assistance with crisis management and communications strategies and provided guidance on the Trustees' duty to certify Title IX reports, pursuant to Mich. Comp. L. § 388.1865b(2).

[6] Barrett, Vivian, and Walters, Alex, *Board unanimously votes to release Quinn Emanuel findings in one report,* THE STATE NEWS (Feb. 10, 2023) (*available at* https://statenews.com/article/2023/02/board-unanimously-votes-to-release-quinn-emanuel-findings-in-one-report).

was released publicly by the Board. The report does not contain any of the legal advice that Quinn Emanuel rendered to the Board during the course of its internal review. At the Board's direction, the report redacts the identities of most individuals, other than Gupta and former provost Teresa Woodruff.

Gupta initially brought this lawsuit against various former and current employees of the University. *Gupta,* Complaint (Doc. 1).[7] On May 22, 2023, the original Defendants filed a motion to dismiss the Complaint (Doc. 15). An order was issued, "[w]ithout expressing any view as to the merits," that granted Gupta leave to amend his complaint, and stated that if Gupta timely filed an amended complaint, the motion to dismiss would be denied without prejudice "as moot." Order (Doc. 17). Gupta filed his Amended Complaint on June 12, 2023 (Doc. 27) and, in doing so, added the Board as a Defendant (along with each of the individual Trustees in their official and personal capacities). The pending motion to dismiss was denied without prejudice (Doc. 35). Defendants' deadline to respond to the Amended Complaint has not yet lapsed, and the original Defendants have explicitly stated their intention to file a motion to dismiss the Amended Complaint by July 14, 2023. *See* Doc. 49. Defendants have also filed a Motion to Stay Discovery (Doc. 22), which seeks an order staying all discovery pending the resolution of any motion to dismiss filed by Defendants in response to Gupta's Amended Complaint. The motion to stay discovery remains pending as of the date of this filing.

On June 8, 2023, Gupta served a subpoena on Quinn Emanuel seeking the production of (1) "[d]ocuments sufficient to identify the 11 individuals interviewed and the 22 additional key personnel who either declined or did not respond to the requests"; (2) the "over 9,300 documents"

---

[7] Unless specified otherwise, the docket numbers referenced in this filing refer to the filings in *Gupta v. Woodruff et al.*, Case No. 23-cv-00201 (W.D. Mich.).

5

"analyzed for the Quinn Emanuel Report"; (3) "[t]he contents of the dedicated email address"; (4) "interim presentations to the Board advising the Trustees of Quinn Emanuel's initial conclusions and recommendations"; and (5) "[d]ocuments sufficient to identify the specific documents requested by Quinn Emanuel, including but not limited to custodians and any search terms." Exhibit A. Quinn Emanuel served responses and objections to these requests on June 22, 2023. Quinn Emanuel met and conferred with counsel for Gupta on June 27, 2023, and again on July 3, 2023, but were unable to resolve all the issues. Gupta agreed to withdraw his fourth request.

The place of compliance stated in the subpoena is Gupta's counsel's office in Chicago, Illinois. Although the subpoena set a compliance date and time of June 29, 2023, at 12:00 p.m., during the June 27, 2023 meet-and-confer, Gupta's counsel agreed to extend the compliance deadline to July 6, 2023.

## LEGAL STANDARD

### I. Motion to Quash Subpoena

The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused. *Lyons v. My Pillow, Inc.*, 2023 WL 2347489, *3 (W.D. Mich. Mar. 3, 2023); Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."). Under Rule 45, "the court . . . *must* quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added). While the person seeking to quash the subpoena "bears the burden of demonstrating that the discovery sought should not be permitted," "the party seeking the

discovery has the initial burden of demonstrating its relevance." *Martin v. Trott Law, P.C.*, 2016 WL 9450599, at *2 (E.D. Mich. Dec. 22, 2016).

Rule 45's special limitations for subpoenas are in addition to the limitations on the scope of discovery permitted under Rule 26(b). *Wichtman v. Martorello*, 2019 WL 244688, *2 (W.D. Mich. Jan. 7, 2019). Thus, information sought by subpoena must be "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

## II. Motion for Protective Order

This Court is authorized, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" caused by a subpoena. Fed. R. Civ. P. 26(c)(1). This Court may "forbid[] the [requested] disclosure or discovery," "specify[] terms . . . for the disclosure or discovery," and "forbid[] inquiry into certain matters[.]" Fed. R. Civ. P. 26(c)(1)(A)–(F); *see also Flagg v. City of Detroit*, 268 F.R.D. 279 (E.D. Mich. 2010); *Buonavolanto v. LG Chem, Ltd.*, 2019 WL 8301068, at *2 (N.D. Ill. Mar. 8, 2019) ("The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45.").

## III. Award of Attorney's Fees and Costs

7

An attorney issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). The court "*must* enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* (emphasis added).

## LEGAL ARGUMENT

As a preliminary matter, Quinn Emanuel files this Motion in the Northern District of Illinois—the district court where compliance is required under the subpoena—pursuant to Federal Rule of Civil Procedure 45(d)(3)(A). Quinn Emanuel respectfully requests that the Court deciding the merits of this Motion quash the subpoena, issue a protective order, and award Quinn Emanuel attorney's fees and costs, for the reasons that follow.

### I. Gupta's Subpoena to Quinn Emanuel Should be Quashed

Courts are required to quash subpoenas that require disclosure of privileged or protected matter or subject a person to undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A). Indeed, seeking privileged information from a party's counsel is an extraordinary and disfavored measure that is permissible only when uniquely justified. *See End Prod. Results, LLC v. Dental USA, Inc.*, 2013 WL 12247127, at *2 (E.D. Mich. Oct. 10, 2013) (explaining that a subpoena to counsel for a party is "extraordinary" and "such discovery is disfavored" and, therefore, it must "be justified by the party serving it") (quotation marks omitted); *see also FTC v. Directv, Inc.*, 2016 WL 4154851, at *3 (N.D. Cal. Aug. 5, 2016) (explaining that subpoenas to counsel for a party are permissible only when the information sought is not available from "other means," is "nonprivileged," and is "crucial to the preparation of the case."); *see also Zurbriggen v. Twin Hill Acquisition Co., Inc.*, 2020 WL 4349891, at *2 (N.D. Ill. July 29, 2020) (explaining that a court shall quash a subpoena if the attorney work-product doctrine protects the underlying documents sought). Gupta cannot make such a showing here. There is no reason why Gupta cannot obtain relevant and non-

8

privileged documents and information regarding the circumstances surrounding his departure as dean through other, non-privileged means, including from parties in his litigation, instead of their former attorneys. The Court should apply heightened scrutiny to Gupta's discovery requests given these extraordinary circumstances—Gupta is seeking attorney work product and attorney-client communications from substantive legal work performed in anticipation of his lawsuit.

Gupta's **Request No. 1** for "[d]ocuments sufficient to identify the 11 individuals interviewed and the 22 additional key personnel who either declined or did not respond to the requests" seeks information protected from disclosure because the selection of which individuals to interview reveals counsel's mental impressions. *See Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 295 (W.D. Mich. 1995) ("The Supreme Court in *Hickman* explained that it would be "'a rare situation'" which would justify disclosure of attorney opinion work product. "'[N]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and mental impressions of an attorney.'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 510, 513 (1947)); *see also U.S. ex rel. Yannacopoulos v. Gen. Dynamics*, 235 F.R.D. 661, 664 (N.D. Ill. 2006) ("Clearly, immunity from discovery for opinion work product is absolute or nearly absolute.").

The individuals Quinn Emanuel asked to interview were identified by Quinn Emanuel as a result of the firm's review of records, consideration of potential factual and legal issues, and exercise of its judgment regarding the potential relevance of information held by specific individuals. As requested by the Board, the Quinn Emanuel report published by the Board on March 31, 2023, does not identify individuals other than Gupta and Woodruff by name and, as a result, did not waive the client's right to protect this information from disclosure. *United States ex rel. Scott v. Humana, Inc.*, 2019 WL 7404032, (W.D. Ky. Sept. 24, 2019). Quinn Emanuel's client, the Board, holds the right to protect this information from disclosure and bears the risk of

9

disclosing employee and student personal identifying information, and the Board has not authorized Quinn Emanuel to disclose this information.[8] Quinn Emanuel's factual findings are already available to Gupta and the rest of the public in the report that the Board published on March 31, 2023.

Production of the documents sought by Gupta's Request No. 1 would also unduly burden Quinn Emanuel. Quinn Emanuel is a non-party to this litigation, increasing the scrutiny the Court should apply to the necessity of any discovery sought from Quinn Emanuel. *See United States v. Real Property Located at 36695 Clarita, Livonia, Mich. 48152,* 2015 WL 6437214, at *1 (E.D. Mich. Oct. 22, 2015) ("Non-party status is . . . a factor in the undue-burden analysis."); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) ("[I]t has been consistently held that 'non-party' status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. . . As such, courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs") (internal citations omitted).

Additionally, the information sought may be obtained through other sources, such as from the defendants in Gupta's litigation, weighing against requiring Quinn Emanuel to answer to a subpoena. *See* Fed. R. Civ. P. 26(b)(2)(C) (courts must limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *Blackwell v. Simon*, 2019 WL 13292585, *4 (W.D. Mich. Dec. 2, 2019) (denying plaintiff's motion to compel the disclosure of documents from a non-party law firm, because the documents sought lacked relevance and were already available to the plaintiff.); *Coultas v. Carlisle Brake & Friction, Inc.*, 2018 WL 9869746, at *4 (N.D. Ohio Mar. 30, 2018) (granting motion to quash subpoena to

---

[8] In addition to attorney work product protection, the Board may have other considerations regarding the privacy of its employees and students.

defense counsel, explaining: "Plaintiff's subpoena has several shortcomings. . . . [T]he first flaw is that Plaintiff had another viable means—namely, Defendant—to obtain the requested information."); *see also Little v. JB Pritzker for Governor*, 2020 WL 1939358, at \*2 (N.D. Ill. Apr. 22, 2020); *Aslani v. Sparrow Health Sys.*, 2009 WL 5892914, at \*2 (W.D. Mich. Nov. 30, 2009) (explaining that the undue burden analysis takes into account whether the requested information "is available from any other source") (quotation marks omitted); *Flynn v. Church of Scientology Intern.*, 116 F.R.D. 1, 3 (D. Mass. 1986) ("The party seeking discovery of the lawyer's 'work-product' must establish adequate reasons to justify such production. When the desired material can be obtained elsewhere, the burden of showing such special circumstances has not been met.") (citing *Hickman v. Taylor*, 329 U.S. 495, 511–513 (1946)). Granting this motion to quash would not place the "facts" beyond Gupta's reach—it would simply require him to find those facts from parties to the litigation—not their attorneys. *Robinson v. Stanley*, No. 06 C 5158, 2010 WL 1005736, at \*5 (N.D. Ill. Mar. 17, 2010).

The subpoena is also overbroad because Quinn Emanuel's engagement was broader in scope than just the circumstances surrounding Gupta's departure as dean—it also embraced Title-IX related matters at the University and the state law requirement that Trustees certify Title IX reports. Thus, Gupta's request for the identities of all thirty-three individuals asked for interviews is overbroad as it captures individuals that Quinn Emanuel did not seek to interview in connection with Gupta's departure. *Blackwell*, 2019 WL 13292585, \*4 (W.D. Mich. Dec. 2, 2019) (denying motion to compel document production from a non-party law firm because the Gupta's request for "all of the documents that MSU produced to [the law firm] as part of its investigation" was "very broad").

Additionally, Defendants have moved to stay discovery, and that motion remains pending the Court's adjudication. The resolution of the motion to stay could pause discovery, making any current production by Quinn Emanuel premature and potentially unnecessary if the court in the underlying action ultimately disposes of the case on a motion to dismiss. *See Fialkoff v. VGM Grp., Inc.*, 2020 WL 13551435, at *3 (N.D. Iowa June 22, 2020) (staying third-party subpoenas at issue until decision on the pending motion to dismiss); *In re Broiler Chicken Antitrust Litig.*, 2017 WL 5347590, at *2-3 (N.D. Ill. Nov. 13, 2017) ("To ensure that no party attempts to fling open the floodgates of third-party discovery before a ruling on the motions to dismiss, the Court now orders that, until Defendants' fully-briefed motions to dismiss are decided, the parties must obtain leave from the Court before serving on a third-party a document production subpoena to which another party objects."); *Nexstar Broadcasting, Inc. v. Granite Broadcasting Corp.*, 2011 WL 4345432, at *4 n.2 (N.D. Ind. Sept. 15, 2011) (granting a motion to stay discovery and distinguishing a case, *Rawat v. Navistar Int'l Corp.*, 2011 WL 3876957 (N.D. Ill. Sept. 1, 2011), where the court granted a motion to compel the defendant to produce documents previously produced in an earlier SEC investigation because the defendant did not show undue burden, explaining that "[*Rawat*] is easily distinguishable as there was no pending motion to dismiss and the parties had moved passed the pleading stage, which is not the case here").

Gupta's **Request No. 2** for "[t]he documents analyzed for the Quinn Emanuel Report, identified as 'over 9,300 documents,'" seeks information covered by attorney-client privilege and work product protections because this collection of documents was provided to Quinn Emanuel by its client in order to facilitate Quinn Emanuel's internal review and rendering of legal advice and based on the legal analysis of Quinn Emanuel regarding the types of information relevant to its inquiry. *See Davis v. Drake*, 2014 WL 5795554, at *4 (N.D. Ohio Nov. 6, 2014) ("T[]he

12

attorney-client privilege attaches to both the communications between an attorney and client as well as the information provided by the client to the lawyer to enable her to carry out the legal representation."). Gupta should not be granted Quinn Emanuel's work product and attorney-client communications to advance Gupta's litigation strategy against Quinn Emanuel's former clients. The policy rationale for attorney privileges and protections is to ensure full and frank disclosures between attorneys and their clients. Granting a litigant his adversary's attorneys' roadmap of litigation exposure undermines the core purpose of these protections.

In addition, Request No. 2 is unduly burdensome, for all the same reasons that Request No. 1 is unduly burdensome. Furthermore, requiring Quinn Emanuel, a non-party, to produce over 9,300 documents, is unduly burdensome. *See Meyer v. Bank of America*, 2018 WL 6436268, *6 (S.D. Ohio Dec. 7, 2018) (discussing as persuasive *Dell, Inc. v. DeCosta*, 233 F.Supp.3d 1, (D.D.C. 2017), where the court held that a request for the production of thousands of documents from a party's prior counsel can be unduly burdensome). Gupta could seek those materials from parties.

Gupta's **Request No. 3** for "[t]he contents of the dedicated email address" is premature and unduly burdensome given Quinn Emanuel's non-party status in this case; the fact that the Motion to Stay Discovery remains pending; and the fact that Defendants' forthcoming motion to dismiss could moot most, if not all, of Gupta's claims, thereby eliminating the need for any discovery on these claims. Gupta could also request those materials from parties to his litigation.

Finally, Gupta's **Request No. 5** for "[d]ocuments sufficient to identify the specific documents requested by Quinn Emanuel, including but not limited to custodians and any search terms" is a runaround way of seeking the same information sought by Gupta's Request No. 2—requests grounded in Quinn Emanuel's mental impressions and legal analysis to complete the scope of work for which it was engaged. The information sought by Request No. 5 is privileged

and protected from disclosure, and Request No. 5 is premature and unduly burdensome for all the same reasons articulated above as to Request No. 2.

For the foregoing reasons, the Court should quash Gupta's subpoena to Quinn Emanuel.

## II. A Protective Order Precluding Discovery from Quinn Emanuel is Appropriate

This Court should also enter a protective order precluding Gupta from issuing any further subpoenas to Quinn Emanuel. Fed. R. Civ. P. 26(c)(1)(A). There is good cause for a protective order: as described above, the discovery sought is beyond the bounds of Rule 26 and Rule 45 because Gupta's requests are overbroad, unduly burdensome, and not proportional to the needs of the case. Furthermore, the attorney-client privilege and attorney work product doctrine bar Gupta's attempt to explore Quinn Emanuel's mental impressions and legal advice regarding his departure as dean. *See Parry*, 125 F.R.D. at 452-53; *see also Parker*, 291 F.R.D. at 187.

## III. Quinn Emanuel Should be Awarded Costs and Attorney's Fees Incurred in Opposing the Subpoena

Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). Sanctions are appropriate for subpoenas to non-parties that are unduly burdensome. *See In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (affirming lower court's imposition of Rule 45(d)(1) sanctions upon finding that the subpoenas imposed an undue burden or expense on non-parties, which the issuing party failed to take reasonable steps to avoid). Not only is Gupta's subpoena unduly burdensome for the reasons set forth above, but Gupta served this subpoena on Quinn Emanuel despite clear precedent that subpoenas to a party's counsel are disfavored, and despite

14

the reality that any factual findings resulting from counsel's review are already public. Accordingly, this Court should sanction Gupta and his counsel in an amount equal to the costs and attorney's fees incurred by Quinn Emanuel in opposing the subpoena. *St. Jean v. Emigrant Mortgage Co.*, 2015 WL 13735434, at *6 (E.D.N.Y. Oct. 7, 2015) ("Courts imposing a sanction of attorney's fees under Rule 45(d)(1) have often granted sanctions equaling most if not all of the attorney's fees sought.") (collecting cases).

## CONCLUSION AND RELIEF SOUGHT

WHEREFORE, Quinn Emanuel respectfully asks the Court to grant its Motion to Quash Subpoena and for Protective Order, and to award Quinn Emanuel its costs and attorney's fees.

Dated: July 3, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/Andrew Schapiro*
Andrew Schapiro (IL ARDC No. 6209041)
Sophia Martell (IL ARDC No. 6333093)
191 N. Wacker Dr., Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Fax: (312) 705-7401
andrewschapiro@quinnemanuel.com
sophiamartell@quinnemanuel.com

Crystal Nix-Hines (*Pro Hac Vice* forthcoming)
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100

crystalnixhines@quinnemanuel.com

Jan-Philip (JP) Kernisan (*Pro Hac Vice* forthcoming)
1300 I Street NW
Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Fax: (202) 538-8100
jpkernisan@quinnemanuel.com

K. McKenzie Anderson (*Pro Hac Vice* forthcoming)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
mckenzieanderson@quinnemanuel.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on July 5, 2023, the foregoing **MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER** was served via US Mail, postage pre-paid on the following:

> Sanjay Gupta
> c/o Katten & Temple, LLP
> 209 S. LaSalle Street, Suite 950
> Chicago, IL 60604

Dated: July 3, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/Andrew Schapiro*
Andrew Schapiro (IL ARDC No. 6209041)
Sophia Martell (IL ARDC No. 6333093)
191 N. Wacker Dr., Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Fax: (312) 705-7401
andrewschapiro@quinnemanuel.com
sophiamartell@quinnemanuel.com

Crystal Nix-Hines (*Pro Hac Vice* forthcoming)
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
crystalnixhines@quinnemanuel.com

Jan-Philip (JP) Kernisan (*Pro Hac Vice* forthcoming)
1300 I Street NW
Suite 900

Washington, D.C. 20005
Telephone: (202) 538-8000
Fax: (202) 538-8100
jpkernisan@quinnemanuel.com

K. McKenzie Anderson (*Pro Hac Vice* forthcoming)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
mckenzieanderson@quinnemanuel.com

Dated: July 3, 2023